Geneva JOHNSON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12451.

Criminal Court of Appeals of Oklahoma.

June 5, 1957.

Rehearing Denied July 3, 1957.

Lon Kile, Hugo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Geneva Johnson was charged by information in the district court of Choctaw County with the crime of murder, and the jury found her guilty of manslaughter in the first degree and assessed her punishment at ten years confinement in the State Penitentiary at McAlester.

Appeal was perfected to this court by the filing on March 19, 1957 of petition in error and casemade. No brief in support of the appeal was ever filed, and no one appeared for oral argument when the case was called for hearing for such purpose on May 29, 1957.

Under the above circumstances, it will not be necessary to detail the evidence, but this court will carefully examine the record only for fundamental error. Shannon v. State, 97 Okl.Cr. 18, 256 P.2d 475; Scales v. State, 96 Okl.Cr. 73, 248 P.2d 645.

This we have done. We find that this case was well tried. The Court was most careful in the matter of rulings on the admission of evidence from offered witnesses, and we find nothing wrong with the instructions to the jury.

The pertinent part of the information charged that:

Geneve Johnson did  *  *  *  on or about the 29 day of October, 1955, and anterior to the presentment hereof, commit the crime of murder in the manner and form as follows, to-wit:

"That she, the said defendant, Geneve Johnson, then and there being, did then and there wilfully, wrongfully, unlawfully and feloniously stab and wound one Earline Moore with a certain open-bladed pocket knife held in the hand of the said Geneva Johnson, with the wilful, wrongful, unlawful and felonious intent to kill the said Earline Moore and did stab and wound the said Earline Moore about the body and from said wounds so inflicted by said defendant, the said Earline Moore did die, as was intended by the said Geneva Johnson she should do, contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the State."

Sufficient to say, the deceased, Earline Moore, the defendant Geneva Johnson and most of the witnesses were colored people from Paris, Texas, who had come across the Red River into Oklahoma on Highway 271 for the purpose of quenching their thirst with 3.2 beer. Defendant's party, which included her husband S. B. Johnson, got to the colored beer tavern

operated by one Jim Ervin first. The deceased and her husband Dickie Moore and party arrived later. Prior to defendant's arrival one Jessie Ware, taxi-driver of Paris, Texas who was with the Johnson party, had teased the defendant, telling her that he had seen Earline Moore inside and had heard that Earline would "get" her. He said that actually he had not seen Earline, but was only teasing. But Earline and her party, a short time after the Johnson party entered the beer tavern and began drinking beer, arrived from Paris and started drinking beer.

It appears that S. B. Johnson, prior to joining the army for a short time, had been Earline's man, though without benefit of actual marriage, but when he returned he married the defendant, Geneva, and although the deceased had married one Dickie Moore she persisted in writing S. B. Johnson, and trying to get him to come back to her. Thus the feud.

Jessie Ware had a knife in his overcoat pocket, and Geneva had felt the knife and mentioned it, and without the knowledge of Ware had taken his knife, opened it· and placed it in her coat pocket. Eventually several women of the Moore party went out behind the beer parlor and squatted down to relieve themselves, and soon defendant Geneva Johnson came out, presumably for the same purpose, as she squatted down, but as the other women got up to return to the beer parlor a commotion was heard and Geneva was holding her "cow boy pants" that were unzipped down one side with her left hand, and striking at Earline with her right, and Earline was fighting back, as they got to the front, Earline's husband ran out and caught her as she was falling, mortally wounded by a knife gash in her neck. She bled to death soon after arrival at a hospital in Paris, Texas.

Jessie Ware saw Geneva with his knife in her hand and attempted to get it back, but she bit him on his arm. He later on went to her home in Paris and got the knife out of her coat.

Defendant claimed that Earline attacked her with an ice pick and stabbed her eight times, though no one else saw an ice pick, or found one. The scratches and abrasions found on defendant were shown to have been superficial ones, contrary to Geneva's contentions.

The jury considered and weighed the evidence and it appears was very lenient in the assessment of punishment.

Thus Oklahoma taxpayers will, in this one case, be out $2,500 or more per year by reason of the foregoing.

Summed up, we see involved two women and one man. Jealousy, the wild scourge of the emotions, aided and abetted by the circumstances enumerated, took command and had its day. The jury decided that the defendant was the probable aggressor. There was ample evidence to support the verdict.

Since the above case was set for oral argument, submitted on the record and the above opinion dictated, brief has been received from counsel for defendant, and it has been carefully examined and considered. We discover nothing to in any way change the conclusions reached.

Judgment affirmed.

BRETT, P. J., and NIX, J., concur.

### On Petition for Rehearing.

Counsel for defendant has filed a petition for rehearing, supported by an exhaustive brief. It is earnestly argued that the circumstances of the case more logically support the idea that the deceased was more likely the aggressor than the defendant. The argument is not without merit. The fact remains, however, that the deceased left the tavern first, soon followed by the defendant. Defendant had only a short time before secured the death knife from the coat pocket of a man in her party. She soon used it. No doubt the arguments now presented to this court were advanced to and considered by the jury. There such matters could be weighed and evaluated, and beyond doubt were, as the amount of

punishment was small compared to what the jury was authorized to assess.

■ As this court has so often said: "Where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh the same and determine the facts."

Woods v. State, 92 Okl.Cr. 53, 220 P.2d 463; Mayberry v. State, 94 Okl.Cr. 301, 238 P.2d 362; Campbell v. State, 95 Okl.Cr. 396, 247 P.2d 281; Fahay v. State, Okl.Cr., 288 P.2d 757.

Petition for rehearing is denied, and the Clerk is directed to issue mandate forthwith.